# ATTACHMENT A

SETTLEMENT AGREEMENT

## I. PARTIES

This Settlement Agreement ("Agreement") is entered into among: the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS") and TRICARE Management Activity ("TMA") (collectively, the "United States"); Melbourne Internal Medicine Associates, P.A. ("MIMA") and Dr. Todd J. Scarbrough (collectively, "defendants"); and Fred Fangman ("Relator") through their authorized representatives. Collectively, all of the above will be referred to as the "Parties."

## II. PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A.      At all times relevant to this matter, MIMA, a Florida medical practice located in Melbourne, Florida, and Dr. Scarbrough, a physician practicing in Florida, submitted or caused to be submitted claims for payment to the Medicare program (Medicare), Title XVIII of the Social Security Act, 42 U.S.C. §§1395-1395hhh and the Department of Defense TRICARE program, 10 U.S.C. §§ 1071-1109.

B.      Relator is an individual resident of Florida.  On July 8, 2008, Relator filed a *qui tam* action in the United States District Court for the Middle District of Florida, Orlando Division, captioned *United States ex rel. Fred Fangman v. Melbourne Internal Medicine Associates, P.A.*, Civil Action No. 6:08-cv-1095-Orl-31DAB (hereinafter "the Civil Action").  Relator was initially hired at the MIMA Cancer Center when it opened in August, 2003 as the chief radiation therapist and became the director of radiation oncology in 2004.  The

United States intervened in the Civil Action on June 19, 2009 and filed the United States'
Complaint on October 16, 2009.

C.      The United States contends that it has certain civil claims against
defendants, as specified in Paragraph 6 below, for engaging in the conduct alleged in the United
States' Complaint filed on October 16, 2009 and for the defendants' improper billing of the
following codes on behalf of the MIMA Cancer Center and Osler Medical from 2003 through
2008: CPT Codes 77431-432, 77435, 76950, 77413-416, 77263, 99212-254, 77470, 76872,
J0207, 96401, 76370 (hereinafter referred to as the "Covered Conduct").

D.      The United States also contends that it has certain administrative claims
against defendants for engaging in the Covered Conduct.

E.      Defendants dispute the allegations of the United States and the Relator
and deny they engaged in any Covered Conduct.  This Agreement is neither an admission of
liability by defendants nor a concession by the United States that its claims are not well founded.

F.      To avoid the delay, uncertainty, inconvenience, and expense of protracted
litigation of the above claims, the Parties reach a full and final settlement pursuant to the Terms
and Conditions below.

III. TERMS AND CONDITIONS

1.      Payment. Defendants agree to pay to the United States $12,000,000 plus simple
interest at the annual rate of 3% (the "Settlement Amount") to be paid to the United States as
follows:

a.      Defendants agree to pay the United States twelve million dollars

($12,000,000) plus interest thereon from October 26, 2009, and continuing through the day before full payment. On the Effective Date of this Agreement, defendants will make a payment to the United States in the amount of six million dollars ($6,000,000). Defendants shall make this electronic funds transfer no later than five business days following the Effective Date of this Agreement. Over a period of ninety days, defendants will pay the remaining six million dollars ($6,000,000), plus interest at 3.0% per annum. All payments will be made by electronic funds transfer pursuant to written instructions provided by Assistant United States Attorney Ralph Hopkins to Michael J. Bittman, Esq., counsel to MIMA.

      b.      Contingent upon the United States receiving the Settlement Amount from defendants and as soon as feasible after receipt, the United States agrees to pay $2,640,000 to Relator by electronic funds transfer to Relator's counsel, Finch McCranie, LLP, pursuant to written instructions provided by Michael A. Sullivan, counsel for Relator. The United States shall pay a pro rata portion of such total amount as soon as feasible after receipt of each settlement payment from defendants. Thus, for example, if defendants make the payments as described in subparagraph (a) above, the United States shall pay one-half of such amount after receipt of the initial $6,000,000 settlement payment, and shall pay the remainder after receipt of the remaining settlement payments from defendants. If the United States collects all or any portion of the Settlement Amount in any other manner, including any method described in paragraph 3 below, Relator shall be entitled to a pro rata portion of any amounts so collected.

      2.      <u>Relator's Attorney's Fees</u>. This Agreement does not resolve Relator's claims against defendants for attorney's fees, expenses, and costs pursuant to 31 U.S.C. §3730(d)(1).

Following execution of this Agreement, Relator may file a petition with the Court in the Civil

Action for such attorney's fees, expenses, and costs.

      3.    <u>Default - Action by the United States</u>.  In the event that defendants fail to pay the

Settlement Amount as provided in Paragraph 1, within five (5) business days of the date upon

which each such payment is due, defendants shall be in Default of their payment obligations

("Default").  The United States will provide a written Notice of Default, and defendants shall

have an opportunity to cure such Default within seven (7) business days from the date of receipt

of the Notice of Default.  Notice of Default will be delivered to MIMA's representative Michael

J. Bittman, GrayRobinson, P.A., 301 East Pine Street, Suite 1400, Orlando, FL 32801, and Dr.

Scarbrough's representative, David L. Evans, Mateer Harbert, Two Landmark Center, Suite 600,

225 East Robinson Street, Orlando, FL 32801, or to such other representative as MIMA or Dr.

Scarbrough shall designate in advance in writing.  If defendants fail to cure the Default within

seven (7) business days of receiving the Notice of Default, the remaining unpaid balance of the

Settlement Amount shall become immediately due and payable, and interest shall accrue at the

rate of 12% per annum, compounded daily from the date of Default, on the remaining unpaid

total (principal and interest balance).  Defendants shall consent to a Consent Judgment in the

amount of the unpaid balance, and the United States, at its sole discretion, may: (a) offset the

remaining unpaid balance from any amounts due and owing to defendants by any department,

agency, or agent of the United States at the time of the Default; or (b) exercise any other rights

granted by law or in equity, including the option of referring such matters for private collection.

Defendants agree not to contest any offset imposed and not to contest any collection action

undertaken by the United States pursuant to this Paragraph, either administratively or in any state

or federal court.  Defendants shall pay the United States all reasonable costs of collection and

enforcement under this Paragraph, including attorney's fees and expenses.

4.      Default - Action by OIG-HHS.  In the event of failure to cure Default as defined

in Paragraph 3 above, OIG-HHS may exclude defendants from participating in Medicare,

Medicaid, or other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) until

defendants pay the Settlement Amount and reasonable costs as set forth in Paragraph 1 above.

Such exclusion shall have national effect and shall also apply to all other federal procurement

and nonprocurement programs.  Medicare or Medicaid shall not pay anyone for items or

services, including administrative and management services, furnished, ordered, or prescribed by

defendants in any capacity while defendants are excluded.  This payment prohibition applies to

defendants, anyone who employs or contracts with defendants, any hospital or other provider

where defendants provide services, and anyone else.  The exclusion applies regardless of who

submits the claims or other request for payment.  Defendants shall not submit nor cause to be

submitted to Medicare, Medicaid, or other Federal health care programs any claim or request for

payment for items or services, including administrative and management services, furnished,

ordered, or prescribed by defendants during the exclusion.  Violation of the conditions of the

exclusion may result in criminal prosecution, the imposition of civil monetary penalties and

assessments, and an additional period of exclusion.  Defendants further agree to hold Medicare,

Medicaid, and all federal beneficiaries and/or sponsors, harmless from any financial

responsibility for items or services furnished, ordered, or prescribed to such beneficiaries or

sponsors after the Effective Date of the exclusion.   Defendants waive any further notice of the

exclusion and agree not to contest such exclusion either administratively or in any state or

federal court.  Reinstatement to program participation is not automatic.  If, at the end of the

period of exclusion, Defendants wish to apply for reinstatement, defendants must submit a

written request for reinstatement in accordance with the provisions of 42 C.F.R. §§ 1001.3001-

.3005.  Defendants will not be reinstated unless and until the OIG-HHS approves such request

for reinstatement.

     5.    <u>Default - Action by TMA</u>.  In the event of failure to cure Default as defined in

Paragraph 3 above, TMA may exclude defendants from participating in TRICARE or other

Federal health care programs (as defined in 32 C.F.R. §§ 199.9 (f)(1)(i)(A), (f)(1)(i)(B), and

(f)(1)(iii)) until defendants pay the Settlement Amount and reasonable costs as set forth in

Paragraph 1 above.  Such exclusion shall have national effect and shall also apply to all other

federal procurement and nonprocurement programs.  TRICARE shall not pay anyone for items

or services, including administrative and management services, furnished, ordered, or prescribed

by defendants in any capacity while defendants are excluded.  This payment prohibition applies

to defendants, anyone who employs or contracts with defendants, any hospital or other provider

where defendants provide services, and anyone else.  The exclusion applies regardless of who

submits the claims or other request for payment.  Defendants shall not submit nor cause to be

submitted to TRICARE or other Federal health care programs any claim or request for payment

for items or services, including administrative and management services, furnished, ordered, or

prescribed by defendants during the exclusion.  Violation of the conditions of the exclusion may

result in criminal prosecution, the imposition of civil monetary penalties and assessments, and an

additional period of exclusion.   Defendants further agree to hold TRICARE, and all federal

beneficiaries and/or sponsors, harmless from any financial responsibility for items or services

furnished, ordered, or prescribed to such beneficiaries or sponsors after the Effective Date of the

exclusion.   Defendants waive any further notice of the exclusion and agree not to contest such

exclusion either administratively or in any state or federal court.   Reinstatement to program

participation is not automatic.   If, at the end of the period of exclusion, Defendants wish to apply

for reinstatement, defendants must submit a written request for reinstatement in accordance with

the provisions of 32 C.F.R. §§ 199.9(g)(1)(i), (h)(4)(ii), and (h)(4)(iii).   Defendants will not be

reinstated unless and until TMA approves such request for reinstatement.

      6.    <u>Release of Defendants by United States</u>.   Subject to the exceptions in Paragraph 9

below, in consideration of the obligations of defendants set forth in this Agreement, conditioned

upon defendants' full payment of the Settlement Amount, and subject to Paragraph 19 below

(concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this

Agreement or any payment under this Agreement), the United States (on behalf of itself, its

officers, agents, agencies, and departments) agrees to release defendants, from any civil or

administrative monetary claim the United States has or may have for the Covered Conduct under

the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. §

1320a-7a or the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common

law theories of payment by mistake, unjust enrichment, and fraud.   The release of MIMA as set

forth in this Paragraph and Paragraphs III. 8 and 10 shall include Nanialei Golden, M.D., Chad

Levitt, M.D., Joseph Ting, Ph.D., Stephen Easterling, Tina Ting, Richard Clements, Lisa

Hutchins, Tracy Whelan, Tracey Vega, Brenda Bonefant, Michelle Mabern, Deborah J.

Kennedy, Joseph McClure, M.D., Joseph Gurri, M.D., James Ronaldson, M.D., Richard Baney,

M.D., and Al O'Connell.

7.     Release of Defendants by OIG-HHS.  In consideration of the obligations of

defendants in this Settlement Agreement, the Corporate Integrity Agreement ("CIA"), and the

Integrity Agreement ("IA") entered into between OIG-HHS and defendants and conditioned

upon defendants' full payment of the Settlement Amount, OIG-HHS agrees to release and refrain

from instituting, directing, or maintaining any administrative action seeking exclusion from

Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-

7b(f)) against defendants under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42

U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited

activities) for the Covered Conduct, except as reserved in Paragraph 9 (concerning excluded

claims), below, and as reserved in this Paragraph.  OIG-HHS expressly reserves all rights to

comply with any statutory obligations to exclude defendants from Medicare, Medicaid, and other

Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon

the Covered Conduct.  Nothing in this Paragraph precludes OIG-HHS from taking action against

entities or persons, or for conduct and practices, for which claims have been reserved in

Paragraph 9, below.

8.     Release of Defendants by TMA.  In consideration of the obligations of defendants

set forth in this Settlement Agreement, conditioned upon defendants' full payment of the

Settlement Amount, TMA agrees to release and refrain from instituting, directing, or maintaining

any administrative action seeking exclusion from the TRICARE Program against defendants

under 32 C.F.R. § 199.9 for the Covered Conduct, except as reserved in Paragraph 9 (concerning

excluded claims), below, and as reserved in this Paragraph.  TMA expressly reserves authority to

exclude defendants from the TRICARE Program under 32 C.F.R. §§ 199.9 (f)(1)(i)(A),

(f)(1)(i)(B), and (f)(1)(iii), based upon the Covered Conduct.  Nothing in this Paragraph

precludes TMA or the TRICARE Program from taking action against entities or persons, or for

conduct and practices, for which claims have been reserved in Paragraph 9, below.

      9.     <u>Exceptions to Release</u>.  Notwithstanding any term of this Agreement, specifically

reserved and excluded from the scope and terms of this Agreement as to any entity or person

(including defendants) are the following claims of the United States:

      a.     Any civil, criminal, or administrative liability arising under Title 26, U.S.

Code (Internal Revenue Code);

      b.     Any criminal liability;

      c.     Except as explicitly stated in this Agreement, any administrative liability,

including mandatory exclusion from Federal health care programs;

      d.     Any liability to the United States (or its agencies) for any conduct other

than the Covered Conduct;

      e.     Any liability based upon such obligations as are created by this

Agreement;

      f.     Any liability for express or implied warranty claims or other claims for

defective or deficient products or services, including quality of goods and services;

g.      Any liability for failure to deliver goods or services due; and

h.      Any liability for personal injury or property damage or for other

consequential damages arising from the Covered Conduct.

10.      <u>Relator's Release</u>.  Relator and his heirs, successors, attorneys, agents, and

assigns agree not to object to this Agreement and agree and confirm that this Agreement is fair,

adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).

Conditioned upon receipt of all payments described in Paragraph 1, Relator, for himself

individually, and for his heirs, successors, attorneys, agents, and assigns, fully and finally

releases, waives, and forever discharges the United States, its officers, agents, and employees,

from any claims arising from or relating to 31 U.S.C. § 3730, including 31 U.S.C. §§ 3730(b),

(c)(5), (d), and (d)(1), from any claims arising from the filing of the Civil Action defined herein

(No. 6:08-cv-1095-Orl-31DAB) in the Middle District of Florida and from any other claims for a

share of the Settlement Amount defined herein, and in full settlement of any claims Relator may

have under this Agreement.  This Agreement does not resolve, or in any manner affect, any

claims the United States has or may have against the Relator arising under Title 26, U.S. Code

(Internal Revenue Code), or any claims arising under this Agreement.  Nor does this Agreement

resolve, or in any manner affect, any claims Relator may have relating to 31 U.S.C. §3730(h).

Further, conditioned upon receipt of all payments described in Paragraph 1, and subject to

Paragraph 19 below (concerning bankruptcy proceedings commenced within 91 days of the

Effective Date of this Agreement), the Relator, for himself, and for his heirs, successors,

attorneys, agents, and assigns, agrees to release defendants, from any civil monetary claim the

Relator may have or may have on behalf of the United States for the Covered Conduct under the

False Claims Act, 31 U.S.C. §§ 3729-3733, and any other claims asserted by Relator in the Civil

Action, except claims under 31 U.S.C. § 3730(d) for expenses or attorney's fees and costs, which

claims shall remain pending following execution of this Agreement.  This release shall not apply

to or affect any claims by Relator pursuant to 31 U.S.C. § 3730(h), any other claims Relator may

have in his personal capacity, or to any claims arising under this Agreement.  Nothing in this

Agreement shall be construed as an admission by defendants that Relator's claims under 31

U.S.C. §3730(h) or in his personal capacity exist, which defendants expressly deny.

    11.    <u>Double Jeopardy and Excessive Fines Clause</u>. Defendants waive and shall not

assert any defenses they may have to any criminal prosecution or administrative action relating

to the Covered Conduct, which defenses may be based in whole or in part on a contention that,

under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the

Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a

remedy sought in such criminal prosecution or administrative action.  Nothing in this Paragraph

or any other provision of this Agreement constitutes an agreement by the United States

concerning the characterization of the Settlement Amount for purposes of the Internal Revenue

laws, Title 26 of the United States Code.

    12.    <u>Defendants' Release</u>. Defendants fully and finally release the United States, its

agencies, employees, servants, and agents from any claims (including attorney's fees, costs, and

expenses of every kind and however denominated) which Defendants have asserted, could have

asserted, or may assert in the future against the United States, its agencies, employees, servants, and agents, related to the Covered Conduct and the United States' investigation and prosecution thereof. Defendants fully and finally release the Relator, and his heirs, successors, partners, employees, agents, attorneys, consultants and/or assigns from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) which Defendants asserted, could have asserted, or may assert in the future against Relator related to the Civil Action, the Covered Conduct, or the United States' or the Relator's investigation of the Civil Action or the Covered Conduct. Nothing in this Agreement shall be construed as a release by MIMA of the Relator and his heirs, successors, partners, employees, agents, attorneys, consultants, and/or their assigns from any claims for breach of employment duties relating to funds received that should have been but were not remitted to MIMA; nor shall it be construed as an admission by Relator that such claims exist, which Relator expressly denies.

13.     <u>Denied Claims</u>.  The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare carrier or intermediary or any state payer, related to the Covered Conduct and defendants shall not resubmit to any Medicare carrier or intermediary or any state payer any previously denied claims related to the Covered Conduct, and shall not appeal any such denials of claims.

14.     <u>Unallowable Costs</u>. Defendants agree to the following:

a.     <u>Unallowable Costs Defined:</u> that all costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47 and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395hhh and 1396-1396v, and the regulations and official

program directives promulgated thereunder) incurred by or on behalf of defendants, in connection with the following shall be "Unallowable Costs" on contracts with the United States and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employee Health Benefits Program ("FEHBP"):

> (1) the matters covered by this Agreement;

> (2) the United States' audits and any civil or criminal investigation(s) of the matters covered by this Agreement;

> (3) Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and any civil or criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

> (4) the negotiation and performance of this Agreement;

> (5) the payment defendants make to the United States pursuant to this Agreement and any payments that defendants may make to the Relator, including costs and attorney's fees. (All costs described or set forth in this Paragraph 14.a. are hereafter "Unallowable Costs").

> (6) the negotiation of, and obligations undertaken pursuant to the CIA and IA to:

>> (i)      retain an independent review organization to perform annual reviews as described in Section III of the CIA and IA; and

>> (ii)     prepare and submit reports to the OIG-HHS.

> However, nothing in this paragraph 14.a.(6) that may apply to the

obligations undertaken pursuant to the CIA and IA affects the status of costs that are not

allowable based on any other authority applicable to defendants. (All costs described or set forth

in this Paragraph 14.a. are hereafter "Unallowable Costs.")

       b.    <u>Future Treatment of Unallowable Costs:</u>  These Unallowable Costs shall

be separately determined and accounted for by defendants, and defendants shall not charge such

Unallowable Costs directly or indirectly to any contracts with the United States or any state

Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost

statement, information statement, or payment request submitted by defendants, or any

subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

       c.    <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>:

Defendants further agree that within 90 days of the Effective Date of this Agreement it shall

identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors,

and Medicaid, VA and FEHBP fiscal agents, any Unallowable Costs (as defined in this

Paragraph) included in payments previously sought from the United States, or any state

Medicaid program, including, but not limited to, payments sought in any cost reports, cost

statements, information reports, or payment requests already submitted by defendants, or any of

its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements,

information reports, or payment requests, even if already settled, be adjusted to account for the

effect of the inclusion of the Unallowable Costs.  Defendants agree that the United States, at a

minimum, shall be entitled to recoup from defendants any overpayment plus applicable interest

and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost

reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice, and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by defendants on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on defendants or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

      d.    Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine defendants' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

15.    Cooperation.  Defendants agree to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement, for the Covered Conduct.

16.    Benefit of the Parties Only.  Except as otherwise provided in this Agreement, this Agreement is intended to be for the benefit of the Parties only.  Except as otherwise provided in this Agreement, the Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 17 below.

17.    No Offset from Beneficiaries.  Defendants waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

18.    Financial Condition.  Defendants warrant that they have reviewed their financial

*United States-MIMA-Scarbrough Settlement Agreement*

situations and that they are currently solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and

548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the

Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this

Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth

constitute a contemporaneous exchange for new value given to defendants within the meaning of

11 U.S.C. § 547(c)(1); and (b) conclude that these mutual promises, covenants, and obligations

do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the

mutual promises, covenants, and obligations set forth herein are intended and do, in fact,

represent a reasonably equivalent exchange of value which is not intended to hinder, delay, or

defraud any entity to which defendants were or became indebted to on or after the date of this

transfer, within the meaning of 11 U.S.C. § 548(a)(1).

     19.   <u>In the Event of Bankruptcy</u>. If, within 91 days of the Effective Date of this

Agreement or of any payment made hereunder, defendants commence, or a third party

commences, any case, proceeding, or other action under any law relating to bankruptcy,

insolvency, reorganization, or relief of debtors, (a) seeking to have any order for relief of

defendants' debts, or seeking to adjudicate defendants as bankrupt or insolvent; or (b) seeking

appointment of a receiver, trustee, custodian, or other similar official for defendants or for all or

any substantial part of defendants' assets, defendants agree as follows:

     a.   Defendants' obligations under this Agreement may not be avoided

pursuant to 11 U.S.C. § 547, and defendants shall not argue or otherwise take the position in any

such case, proceeding, or action that: (i) defendants' obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) defendants were insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States hereunder; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to defendants.

        b.     If defendants' obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement, and bring any civil and/or administrative claim, action, or proceeding against defendants for the claims that would otherwise be covered by the release provided in Paragraph 6 above. Defendants agree that (i) any such claims, actions, or proceedings brought by the United States (including any proceedings to exclude defendants from participation in the Federal health care programs) are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceeding described in the first clause of this Paragraph, and that defendants shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) defendants shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding which are brought by the United States within 90 calendar days of written notification to defendants that the releases herein have been rescinded pursuant to this Paragraph, except to the extent such defenses were

available on the Effective Date of this Agreement; and (iii) the United States has a valid claim

against defendants in the amount of $24,000,000.00, plus penalties, and the United States may

pursue its claim in the case, action, or proceeding referenced in the first clause of this Paragraph,

as well as in any other case, action, or proceeding.

        c.      Defendants acknowledge that their agreement in this Paragraph is

provided in exchange for valuable consideration provided in this Agreement.

     20.    <u>Costs</u>.  Except as expressly provided to the contrary in this Agreement, each Party

shall bear its own legal and other costs incurred in connection with this matter, including the

preparation and performance of this Agreement.

     21.    <u>Voluntary Agreement</u>.  Defendants and Relator represent that this Agreement is

freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

     22.    <u>Governing Law</u>.  This Agreement is governed by the laws of the United States.

The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and

among the Parties under this Agreement shall be the United States District Court for the Middle

District of Florida, except that any disputes arising under the CIA and IA shall be resolved

exclusively through the dispute resolution provisions set forth in the CIA and IA.

     23.    <u>Drafting</u>.  For purposes of construction, this Agreement shall be deemed to have

been drafted by all Parties to this Agreement.

     24.    <u>Entire Agreement</u>.  This Agreement constitutes the complete agreement between

the Parties.  This Agreement may not be amended except by written consent of the Parties.

25.     <u>Dismissal of Action</u>.  Upon receipt of the last of the payments described in Paragraph 1 above, the United States and the Relator shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal which will generally state as follows: The United States and the Relator will dismiss all claims in the Civil Action with prejudice as to Melbourne Internal Medicine Associates, P.A. and Dr. Todd J. Scarbrough, except Relator's claims for attorney's fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d), against defendants in the Civil Action, which shall not be dismissed and shall remain pending, and the Court shall retain jurisdiction over such claims.

26.     <u>Capacity to Execute</u>.  The individuals signing this Agreement on behalf of defendants represent and warrant that they are authorized by defendants to execute this Agreement.  The individuals signing this Agreement on behalf of the Relator represent and warrant that they are authorized by the Relator to execute this Agreement.  The United States' signatories represent that they are signing this Agreement in their official capacities and that they are authorized to execute this Agreement.

27.     <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same agreement.

28.     <u>Successors</u>.  This Agreement is binding on defendants' and relator's successors, transferees, heirs, and assigns.

29.     <u>Disclosure of Agreement</u>.  All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

30.     <u>Effective Date</u>. The "Effective Date" of this Agreement shall be the date of signature of the last signatory to the Agreement.  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

<u>THE UNITED STATES OF AMERICA</u>

DATED: 3-2-10                     BY:

                                  A. BRIAN ALBRITTON
                                  United States Attorney

                                  RALPH HOPKINS
                                  Assistant United States Attorney
                                  501 W. Church Street, Suite 300
                                  Orlando, FL 32805
                                  (407) 648-7562


DATED: _____          BY:

                                  _____
                                  TONY WEST
                                  Assistant Attorney General

                                  JOYCE R. BRANDA
                                  RENÉE BROOKER
                                  EVA U. GUNASEKERA
                                  Attorneys, Civil Division
                                  Commercial Litigation Branch
                                  P. O. Box 261
                                  Ben Franklin Station
                                  Washington, D.C.  20044
                                  (202) 305-3148

THE UNITED STATES OF AMERICA

DATED: _____        BY:

                                _____
                                A. BRIAN ALBRITTON
                                United States Attorney

                                RALPH HOPKINS
                                Assistant United States Attorney
                                501 W. Church Street, Suite 300
                                Orlando, FL 32805
                                (407) 648-7562


DATED: _03/23/2010_             BY: _Eva Gunasekera_
                                TONY WEST
                                Assistant Attorney General

                                JOYCE R. BRANDA
                                RENÉE BROOKER
                                EVA U. GUNASEKERA
                                Attorneys, Civil Division
                                Commercial Litigation Branch
                                P. O. Box 261
                                Ben Franklin Station
                                Washington, D.C.  20044
                                (202) 305-3148

DATED: _3/22/10_

BY: _____
GREGORY E. DEMSKE
Assistant Inspector General for Legal Affairs
Office of Inspector General
United States Department of Health
and Human Services

DATED: _____

BY: _____
LAUREL C. GILLESPIE
Deputy General Counsel
TRICARE Management Activity
United States Department of Defense

–22–

DATED:_____          BY:

                                 _____
                                 GREGORY E. DEMSKE
                                 Assistant Inspector General for Legal Affairs
                                 Office of Inspector General
                                 United States Department of Health
                                 and Human Services

DATED: 10 March 2010             BY: _____
                                 LAUREL C. GILLESPIE
                                 Deputy General Counsel
                                 TRICARE Management Activity
                                 United States Department of Defense

–22–

Melbourne Internal Medicine Associates – Settlement Agreement

DEFENDANT – MELBOURNE INTERNAL MEDICINE ASSOCIATES, P.A.

DATED: March 17, 2010                    BY: _____

                                         JOSEPH MCCLURE
                                         President and Chief Executive Officer
                                         Melbourne Internal Medicine Associates

DATED: 3/18/2010                         BY: _____

                                         MICHAEL J. BITTMAN
                                         Counsel for Melbourne Internal
                                         Medicine Associates

DEFENDANT -- DR. TODD J. SCARBROUGH

DATED:_____                     BY: _____

                                         DR. TODD J. SCARBROUGH

DATED:_____                     BY: _____

                                         DAVID L. EVANS
                                         Counsel for Dr. Todd J. Scarbrough

–23–

DEFENDANT – MELBOURNE INTERNAL MEDICINE ASSOCIATES, P.A.

DATED:_____          BY:  _____
                                    JOSEPH MCCLURE
                                    President and Chief Executive Officer
                                    Melbourne Internal Medicine Associates


DATED:_____          BY:  _____
                                    MICHAEL J. BITTMAN
                                    Counsel for Melbourne Internal
                                    Medicine Associates


DEFENDANT – DR. TODD J. SCARBROUGH


DATED: 3-16-10                 BY:  _____
                                    DR. TODD J. SCARBROUGH


DATED: 3/17/10                 BY:  _____
                                    DAVID L. EVANS
                                    Counsel for Dr. Todd J. Scarbrough


–23–

<u>THE RELATOR – FRED FANGMAN</u>

DATED: 3/16/2010                    BY: _____
                                         FRED FANGMAN


DATED: 3-17-2010                    BY: _____
                                         MICHAEL A. SULLIVAN
                                         Counsel for the Relator


DATED: 3-17-2010                    BY: _____
                                         G. MARK SIMPSON
                                         Counsel for the Relator


–24–